**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **D'ANGELO NATHAN,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 26-1669 (JEB)** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** | |
| **Defendant.** | |

**MEMORANDUM OPINION**

In the fall of 2024, a United Parcel Service truck heading down Benning Road in Northeast Washington collided with a white pickup truck traveling in the same direction in the lane on its left. This case, however, concerns what happened between the UPS truck and the vehicle in the lane on its right: a Washington Metropolitan Area Transit Authority bus. UPS driver and Plaintiff D'Angelo Nathan sued WMATA, alleging that the bus driver negligently intruded into his lane, causing his collision with the pickup. WMATA video cameras on the bus captured the scene — and complicate Plaintiff's theory. Pointing to that footage, Defendant now moves for summary judgment, contending that contributory negligence on Nathan's part bars recovery. Agreeing with WMATA, the Court will grant its Motion.

## I.    Background

Because the Court is considering Defendant's Motion for Summary Judgment, it will construe the facts in the light most favorable to Plaintiff. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). As there is video evidence in this case, however, it must also take care to

1

"view[] the facts in the light depicted by the videotape." Scott v. Harris, 550 U.S. 372, 381 (2007).

Having serviced a bus stop on Benning Road on the morning of October 3, 2024, a large WMATA passenger bus pulled back into the roadway to continue on its route. See ECF Nos. 6 (Am. Compl.), ¶¶ 4–5; 8-4 (Video) at Camera 10, 9:27:27–32. After carrying its passengers in the right lane unremarkably for a few moments, it began to drift to its left, encroaching — to a slight degree — on the lane where Plaintiff had emerged in his UPS truck. See ECF No. 11-1 (Opp.) at 3 (Paragraph 5 of Plaintiff's Statement of Undisputed Material Facts); Video at Camera 10, 9:27:36–37. Plaintiff then also moved to his left, crossing into the lane where a white Ram pickup truck was traveling. See Video at Camera 10, 9:27:40–41. They collided. Id. at Camera 10, 9:27:42. A chain reaction ensued, with the pickup rotating in front of Plaintiff's truck and striking the WMATA bus. Id. at Camera 10, 9:27:43. Plaintiff alleges in this action that he suffers from "permanent injuries and mental anguish" and seeks damages to compensate for such pain and suffering as well as for associated medical expenses. See Am. Compl., ¶ 11; id. at 3.

Nathan initially brought suit in D.C. Superior Court this past May against both the bus driver (for negligence) and WMATA (for vicarious negligence and negligent hiring, training, and supervision). See ECF No. 1-4 (Compl.), ¶¶ 13–27. As is its statutory prerogative, see D.C. Code § 9-1107.10, Defendant removed the case to this Court, see ECF No. 1 (Not. of Removal), ¶ 4, and Plaintiff amended his Complaint to pursue only the vicarious-liability negligence claim against WMATA. See Am. Compl., ¶¶ 8–12. Notably, in both Complaints, Nathan alleged that the first vehicular contact involved the Metrobus striking his truck as the bus veered left. See Compl., ¶¶ 10–11; Am. Compl., ¶¶ 6–7. The police report from the incident makes a similar observation after police apparently reviewed WMATA's footage (and also briefly relates the

2

positions of Nathan and a WMATA passenger regarding post-accident medical needs).  See ECF

No. 11-2 (Police Report) at 3.  WMATA answered on June 2, generally denying the allegations

and asserting a number of defenses including contributory negligence.  See ECF No. 7 (Answer)

at 1–2.  Only then did the video footage come to light.  See ECF No. 8-1 (MSJ) at 1.  That

footage, captured by 12 cameras on Defendant's moving bus, see Opp. at 3 (Paragraph 1 of

PSUMF); Video at Cameras 1–12, prompted WMATA to file this Motion for Summary

Judgment on the theory that it clearly shows Plaintiff's contributory negligence.  See MSJ at 1.

## II.      Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986);

Holcomb, 433 F.3d at 895.  A fact is "material" if it is capable of affecting the substantive

outcome of the litigation.  Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute

is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  Liberty Lobby, 477 U.S. at 248; see also Scott, 550 U.S. at 380; Holcomb,

433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support

the assertion" by "citing to particular parts of materials in the record" or "showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

court must "view the evidence in the light most favorable to [the nonmovant] and draw all

reasonable inferences in her favor," Holcomb, 433 F.3d at 895, but the nonmovant "may not rest

upon mere allegation or denials of his pleading[s] [and] must present affirmative evidence

showing a genuine issue for trial."  Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C. Cir.

1987) (internal quotation marks and citation omitted).  Where there is video evidence, the court does not accept a "version of events . . . so utterly discredited by [it] that no reasonable jury could have believed" such a version and instead must "view[] the facts in the light depicted by the videotape."  Scott, 550 U.S. at 380–81.

The WMATA Compact dictates that the Transit Authority's tort liability is assessed "in accordance with the law of the applicable signatory,"  D.C. Code § 9-1107.01(80), which in this case is D.C.  See Robinson v. Washington Metro. Area Transit Auth., 774 F.3d 33, 38 (D.C. Cir. 2014).  Applying District law, this Court is "required to predict what the District of Columbia's highest court would conclude if presented with this question."  325–343 E. 56th St. Corp. v. Mobil Oil Corp., 906 F. Supp. 669, 676 (D.D.C. 1995) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)).

### III.    Analysis

Resolving this issue essentially reduces to a single question: does the WMATA bus footage mandate a finding that Plaintiff was contributorily negligent as a matter of law?

"Contributory negligence is conduct which falls below the standard to which a plaintiff should conform for his own protection."  Washington Metro. Area Transit Auth. v. Cross, 849 A.2d 1021, 1024 (D.C. 2004) (internal quotation marks and citation omitted).  Because contributory negligence remains a complete bar to recovery in D.C., see, e.g., White v. United States, 780 F.2d 97, 107 & n.36 (D.C. Cir. 1986) (citing Elam v. Ethical Prescription Pharmacy, Inc., 422 A.2d 1288, 1289 n. 2 (D.C. 1980)), if the WMATA footage answers that key question in the affirmative, then Defendant has earned summary judgment; if not, then the case will proceed.  The Court acknowledges that the latter is the road better traveled: "Ordinarily, questions of negligence and contributory negligence must be decided by the trier of fact."

Poyner v. Loftus, 694 A.2d 69, 71 (D.C. 1997).  In certain cases, however, "where the facts are undisputed and, conceding every legitimate inference, only one conclusion may be drawn, . . . the trial court may rule as a matter of law on . . . contributory negligence."  Washington Metro. Area Transit Auth. v. Jones, 443 A.2d 45, 50 (D.C. 1982).

Turn now to the key piece of evidence, the WMATA video.  Pressing play around 9:27:32, the viewer focusing on Camera 10 will observe the Metrobus begin to pull away from a stop.  See Video at Camera 10, 9:27:32.  Between four and five seconds later, the footage shows two important developments: first, the white pickup truck comes into view two lanes to the bus's left, and second, the bus begins to drift toward the left.  Id. at Camera 10, 9:27:36–37.  That is the scene when Nathan's truck enters the camera frame.  As the bus drifts into Nathan's lane, he does not slow down to avoid it; instead, he zips into the narrow — and potentially narrowing — space between the bus on his right (he stays toward the back) and the pickup (more directly) on his left.  Id. at Camera 10, 9:27:39.  Now caught between the bus on his left and the truck on his right, Nathan once again does not slow down but keeps moving left — straight into the white Ram.  Id. at Camera 10, 9:27:40–42.  That collision caused the pickup to spin nearly 90 degrees in front of Plaintiff's truck and hit the Metrobus, bringing all three vehicles to a halt by 9:27:50.  Id. at Camera 10, 9:27:42–50.

As a preliminary matter, Nathan has contended that he did not deliberately shift into the next lane; rather, an "initial collision between the Metrobus and the Plaintiff[] pushed the Plaintiff's vehicle to the left and strike [sic] a third vehicle."  Am. Compl., ¶ 7.  In an effort to carry his burden as the nonmovant to "present affirmative evidence" on that contested score, Laningham, 813 F.2d at 1241 (internal quotation marks and citation omitted), rather than filing a declaration attesting to the initial collision (for example), Nathan relies on the police report.  See

5

Opp. at 5–6; Police Report at 3 (stating that "[w]hen the bus driver shifted lanes, he struck the mirror of [Plaintiff's vehicle]").  WMATA's video exhibit, however, renders that version of events a "visible fiction."  Scott, 550 U.S. at 381; see Video at Camera 10, 9:27:39–41 (showing no contact between Plaintiff and Defendant before Plaintiff's collision with pickup).  To the extent that the police's description derives from their review of the video, it does not bear on the Court's own duty to independently review the footage, cf. Scott 550 U.S. at 381; to the extent that it derives from sources at the scene, it is inadmissible hearsay at this stage.  See, e.g., Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007).

That discredited interpretation aside, what remains is Plaintiff's argument that "[h]ad the Metrobus remained in its lane, the accident would not have occurred."  Opp. at 8.  Maybe, but that does not answer the essential question of whether any negligence on Plaintiff's part contributed to the collision.  The video footage unambiguously shows that, in view of a narrowing gap, Nathan forwent an obvious option that was also the reasonable and prudent one: slow down.  See Video at Camera 10, 9:27:39–41.  He instead accelerated into that narrowing gap and — in response to slight encroachment by the Metrobus from the right — shifted decidedly into the lane to his left, where he had reason to know a vehicle was traveling.  Id.  In doing so, Nathan neglected to "use ordinary care at all times to avoid colliding with other [drivers] and to avoid placing himself and others in danger."  D.C. Std. Civ. Jury Instr. No. § 7.02; cf., e.g., Huber v. United States, 2019 WL 1614981, at *5 (D.D.C. Apr. 16, 2019) ("[Plaintiff] also had the duty to exercise reasonable care as a normal driver would when another vehicle was changing lanes."); Hulley v. Martinez, 1989 WL 34321, at *2 (D.D.C. Mar. 22, 1989) (noting that in D.C. "the primary duty to exercise due care to avoid collision as between

motorist ahead and motorist following[] lies with the following motorist") (internal quotation marks and citation omitted).

Insofar as Nathan does appear eventually to have "slowed his vehicle down and tried to make space between him and the Metrobus," Opp. at 7, he did so only once he had already crossed into the pickup's lane. See Video at Camera 10, 9:27:40–42. The parties' apparent disagreement over whether Plaintiff slowed down at the reasonable time, then, is not a "genuine" dispute. Liberty Lobby, 477 U.S. at 248; compare ECF No. 12 (Reply) at 3, with Opp. at 5, 7. Once again, a driver exercising ordinary care in Plaintiff's position would have decelerated in his own lane or otherwise refrained from charging into the straits facing him to begin with.

Because the Court does not stray outside its own lane in concluding that any reasonable jury would find that Plaintiff's negligence contributed to the collision, summary judgment must be awarded to WMATA.

**IV.    Conclusion**

The Court, accordingly, will grant Defendant's Motion for Summary Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: July 31, 2026